IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

RAYMOND RIDDICK,

    Plaintiff,

v.                                                                                    Action No. 2:21cv297

NORFOLK SOUTHERN RAILWAY CO.,

    Defendant.

## OPINION AND ORDER

Pending before the Court is defendant Norfolk Southern Railway Company's ("Norfolk Southern") motion *in limine* to exclude the testimony of plaintiff's expert, Philip Graham. ECF No. 33. Plaintiff, Raymond Riddick ("Riddick"), filed a response in opposition, ECF No. 39, and Norfolk Southern filed a reply, ECF No. 40. As the motion is fully joined and oral argument is unnecessary, the matter is ready for decision. For the reasons stated below, Norfolk Southern's motion (ECF No. 33) is **GRANTED**.

## BACKGROUND

Riddick's complaint alleges a single count of negligence arising from a May 30, 2019 accident at Norfolk Southern's place of business in Norfolk, Virginia. ECF No. 1, at ¶¶ 7–9, Complaint ("Compl."); *see* ECF No. 34, at 1 (identifying the location as the "38th Street Carshop"). Riddick, a truck driver for UPS, delivered new railroad car wheel sets, weighing approximately 3,500 pounds each, stored on the back of the truck's flatbed trailer. *See* ECF No. 39, at 1. After two Norfolk Southern employees removed the new wheel sets using forklifts specially outfitted for that task, Riddick and the forklift operators began placing used wheel sets on the trailer for transport by Riddick. *See id.*; *see also* ECF No. 34, at 2. Riddick stood on the back of the trailer

to assist with this task. Compl. ¶ 11. While he did so, one of the forklift drivers allegedly improperly moved and dropped a wheel set onto the back of the trailer, contrary to safe procedures, causing Riddick to fall off the trailer and suffer an injury. *Id.* at ¶¶ 11–14; *see* ECF No. 34, at 1–2 (noting Riddick allegedly "fell or bailed off the UPS trailer to avoid a wheel set which began rolling towards him after it either dislodged from or was never set in the trailer grooves" used to line up the wheel sets for transportation); *see* ECF No. 39, at 2 (noting "[p]laintiff was caused to fall off the UPS trailer . . . to avoid being struck by the wheel set . . . released without permission"). Reportedly, the unsecured, old wheel set also rolled off the trailer to the ground. ECF No. 39, at 1.

The pending motion relates to Riddick's retention of Philip Graham ("Graham") as an expert to opine regarding the incident on May 30, 2019. *See* ECF No. 34-8, at 2. Graham identifies himself as an expert "in the areas of railroad operations related to rail yards and shops, the mechanical department, and the duties of carmen, including the handling of wheel sets." *Id.* Graham expertise stems from his 39 years of experience in the railroad industry, working as a journeyman carman for Norfolk Southern and the Southern Railroad. *Id.* He also reports serving for 23 years as a local chairman of the Brotherhood of Railway Carmen of America. *Id.* Graham completed a five-page expert report on December 21, 2021, as well as a four-page, supplemental expert report on February 23, 2022. ECF Nos. 34-8, 34-10.

Norfolk Southern seeks to exclude Graham's expert testimony on several grounds, including that: (1) Graham's reports are unreliable as they lack explanation and specify no standards, technical or scientific principles, or other methods supporting his conclusions; (2) by weighing facts disputed by the parties and drawing overbroad conclusions, Graham invades the province of the jury and unfairly prejudices the defense; (3) Graham offers only a qualified opinion

about one of the forklift driver's limited field of vision, without the requisite certainty required by an expert; (4) Graham lacks sufficient experience to render the opinions reached; and (5) Graham's opinions fall within the ken of jurors and require no special expertise. ECF No. 34, at 7–11; ECF No. 40, at 1–3.

Riddick opposes Norfolk Southern's motion arguing that the "proper procedures and safety rules for a railroad worker using a forklift to load wheel sets onto a tractor trailer constitutes specialized knowledge" that will assist a jury. ECF No. 39, at 4–5. Due to Graham's experience performing the very same tasks, his railroad industry knowledge and education, his review of assorted discovery materials and depositions, and his site visit and inspection of forklifts and wheel sets located there, Riddick argues, among other things, that Graham may testify to Norfolk Southern's violation of "good railroading safety practice" and its "own rules and industry practice." *Id.* at 2–7. Riddick also contends that Norfolk Southern's critiques of Graham's proffered testimony should be left for cross-examination and are matters going to the weight, and not the admissibility, of such testimony. *Id.* at 8.

## STANDARD OF REVIEW

Rules 702 and 104(a) of the Federal Rules of Evidence and the line of cases flowing from the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–93 (1993) govern Norfolk Southern's challenge to the reliability of Graham's testimony. Rule 702 provides that an expert may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge will help the jury understand the evidence or determine a basic fact in issue; the testimony is based on sufficient facts or data; is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case.

3

Application of Rule 702 involves two primary inquiries: (1) whether the proposed testimony is reliable; and (2) whether it is relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005). Before allowing a jury to hear disputed expert testimony, a court must make these inquiries and exercise its gatekeeping function. *Nease v. Ford Motor Co.*, 848 F.3d 219, 230–31 (4th Cir. 2017). As noted by the Fourth Circuit, although "Rule 702 was intended to liberalize the introduction of relevant expert evidence," the potentially powerful and persuasive nature of such evidence requires its exclusion when there exists "a greater potential to mislead than to enlighten." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

A court assessing the <u>relevance</u> of an expert's testimony reviews "whether . . . [it] is sufficiently tied to the facts of the case . . . [and] will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citation omitted). Expert testimony about matters coming within a jury's knowledge and experience is not helpful and is barred by Rule 702. *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990). To assess whether an expert's testimony will aid a jury to understand the evidence and resolve disputed facts, a court must consider whether such testimony "fits" the facts of the case, by relating to the inquiry the jury must address. *Daubert*, 509 U.S. at 591.

To be deemed <u>reliable</u>, expert testimony must be grounded in "scientific, technical, or other specialized knowledge and not on belief or speculation" and "derived [from the use of] scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (citation omitted). As the Fourth Circuit noted in *Nease*, 848 F.3d at 230, the Supreme Court's decision in *"Kumho Tire* [made clear] that *Daubert* was not limited to the testimony of scientists."

A non-scientist expert, whose opinions arise from his experience, must explain "how his experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 F. App'x 612, 618 (4th Cir. 2011). Accordingly, an "expert report should be written in a manner that reflects the testimony the expert witness is expected to give at trial." *Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005). Further, "[e]xpert reports 'must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions.'" *Washington v. McKee*, No. 4:06cv6, 2006 WL 2252064, at *2 (E.D. Va. Aug. 3, 2006) (citing *Salgado v. Gen. Motors Corp.*, 150 F. 3d 735, 742 (7th Cir. 1998)).

In *Daubert*, the Court set out five factors a court may consider when evaluating expert testimony. *Daubert*, 509 U.S. at 593–94. Those factors, however, do not necessarily apply to every case; nor was the listing all encompassing. *Kumho Tire*, 526 U.S. at 141, 150–51 (describing the factors as "helpful, not definitive"). Instead, a court's analysis of expert testimony is "flexible" and focused upon "the principles and method[ology] employed," rather than the expert's conclusion. *Id.; see Westberry*, 178 F.3d at 261 (noting that a court need not decide whether an expert's testimony "is irrefutable or certainly correct").

Finally, the proponent of expert testimony bears the burden of establishing, by a preponderance of the evidence, that the testimony is admissible in accordance with these principles. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citation omitted).

## ANALYSIS

A. **Graham's initial and supplemental expert reports are inadequate and fail to supply reliable bases for his proposed, conclusory expert testimony.**

After listing the areas of expertise noted above and detailing the items he reviewed, Graham's initial report reviews the facts of the incident and describe the actions of Riddick and

5

the two forklift operators, in unloading the new wheel sets and loading the used wheel sets. ECF No. 34-8, at 2–4. Based on his own fact-finding, Graham opines "to a reasonable certainty in [his] field" that:

- The Defendant failed to provide plaintiff with proper safety briefings with all involved in the job to be performed, i.e., the loading and unloading of wheel sets.
- The Defendant negligently failed to allow the driver to control the loading and securement of the wheel sets.
- The Defendant's employees negligently failed to properly communicate with the Plaintiff during the loading of the wheel sets.
- Defendant's employees failed to file a timely report of the subject incident to Defendant preventing a proper investigation.
- The Defendant's employees improperly loaded a wheel set onto the trailer resulting in a loose wheel set rolling toward Plaintiff and falling onto the ground.
- Defendant negligently failed to provide a reasonably safe workplace and work methods for Plaintiff by rushing the work using two forklifts, and workers on overtime, and not waiting until Plaintiff indicated he was ready to safely receive the wheel set.
- Plaintiff was not careless or at fault in this event.

*Id.* at 4–5. After this listing, Graham also opines that: (1) "Defendant could have prevented the injury in question by better training of its employees and requiring its employees to follow industry standards and its own company rules for loading of wheel sets"; (2) "Good railroading practice is to use safety briefings to keep everyone informed"; and (3) "Safe use of forklifts for loading wheel sets requires the forklift operator to wait for a signal from the driver before dropping each set." *Id.* at 5.

Graham's supplemental report details his review of additional discovery items, including deposition transcripts, and the results of his site visit and forklift inspection on February 21, 2022. ECF No. 34-10, at 2–3. In it, Graham further opines, based on his inspection, that: (1) the "forklift likely involved" in the incident presented "significant visibility problems for the forklift operator to see the deck of the trailer in order to properly see what he is doing"; and (2) "[e]ven if Mr.

6

Howie's [the forklift operator] version of events is true, he still violated good railroading safety practice and caused the injury to Plaintiff . . . [by not] allow[ing] Plaintiff to control the loading of his own trailer as required." *Id.* at 3.

As the defense correctly argues, these opinions are unreliable for several reasons. First, aside from indicating that he worked as a journeyman carman for 39 years and apparently served as a union official, Graham's reports offer no significant information about his work experience or how it relates to the parties' dispute. Graham nowhere explains, for example, what he did as a carman and/or in the mechanical department, whether he drove forklifts, whether those forklifts were outfitted with special equipment like that used on May 30, 2019, or whether he had prior experience loading and unloading wheel sets onto the beds of tractor trailers like that driven by Riddick. Absent such a specification, the Court is unable to determine whether Graham, in fact, possesses the specialized experience needed to opine about such matters at trial. *See* Fed. R. Evid. 702(b) (noting expert testimony must be "based on sufficient facts or data"). To the extent Riddick invites the Court to comb through Graham's deposition to fill the gaps in Graham's reports, ECF No. 39, at 2, such tasks are allocated by Rule 26(a)(2)(B) to the parties and their proposed experts. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) & (ii) (requiring a "complete statement of all opinions . . . and the basis and the reasons for them" and "the facts or data considered by the witness in forming them").

Second, absent the specification noted above or other information, Graham's conclusory opinions are untethered to any knowledge base or methodology. For example, Graham identifies failures of communication, signaling, reporting, and in providing a safe workplace and work methods, without first specifying applicable standards, rules, and/or practices relating thereto. Although citing to, among other things, Norfolk Southern's Operating Rule 1(a), Safety and

7

General Conduct Rule 913, and a Norfolk Southern Corporation Mechanical Safety Bulletin, ECF No. 34-8, at 2, 5, Graham never reviews what the rules and bulletin state and how they pertain to the parties' dispute. Nor does he provide any support, other than his naked and conclusory opinion, for what constitutes "good railroading safety practice." *See* ECF No. 34-10, at 3–4; *see also* ECF No. 39, at 3 (extolling Graham's knowledge of "good railroading safety practice" without support).

Similarly, while asserting that Norfolk Southern could have prevented Riddick's injury with better training and by following "industry standards," ECF No. 34-8, at 5, Graham never identifies any such standards or applicable training requirements or discusses how these compare to any training actually received by the forklift operators involved in the incident.

Third, Graham assumes that certain roles and functions should have been allocated between Riddick and the forklift operators, but fails to ground such assignments in his work experience or in Norfolk Southern's work rules or industry standards.

Without specified experiential or other benchmarks of the appropriate standard of care and practice, Graham's opinions and testimony about the same are not "the product of reliable principles and methods," as required by Rule 702(c). Nor, given the wholly conclusory and unsupported nature of Graham's reported opinions, can the Court assess that he "reliably applied [any] principles and methods," as required by Rule 702(d).

Finally, Graham's post-inspection supplemental opinion that "the forklift likely involved" in the incident posed "significant visibility problems for the forklift operator to see the deck of the trailer" is also unreliable. *See* ECF No. 34-10, at 3. At his deposition, when asked if forklift operator Howie on the day of the incident could see "whether or not the flanges on the wheel set were properly seated in the grooves on the trailer," Graham responded, "I don't know whether he can see or not. That's where the driver should come in, to tell him when they're seated." ECF

8

No. 34-4, at 12 (44:16–20). When asked whether, based on his inspection, a forklift operator whose view to the center was blocked by the lift and cradle holding any wheel set, would be expected to look to the left or right to place the wheel set in the trailer's grooves, Graham replied, "I can't say because I didn't see a wheel loaded on a trailer and see exactly can you see up on that trailer from that forklift. I don't know that." *Id.* (43:4–14); *see also id.* at 15 (56:23–57:4) (admitting he did not know whether a forklift operator could move his body to either side to view the placement of a wheel set into the trailer grooves). Given Graham's uncertainty about what an operator could see when using a forklift and raising and placing a wheel set onto a trailer and in the wheel grooves, and the lack of adequate inspection to discern such facts, Graham's opinion about "significant visibility problems" is based on insufficient facts, is speculative, and will not be helpful to a jury. For all of these reasons, the Court excludes expert testimony by Graham.

**B.    Graham's opinions about Norfolk Southern's "negligence" and Riddick's lack of "fault" are legal conclusions subject to exclusion as unfairly prejudicial to Norfolk Southern and unhelpful to the jury.**

Norfolk Southern's arguments that Graham's opinions invade the province of the jury are invalid in one respect and valid in another. The Court rejects Norfolk Southern's attempt to exclude Graham's opinions because he bases them upon a version of allegedly disputed facts deemed by Graham, after review, to be the most credible. *See* ECF No. 34, at 7 (arguing that "Graham's 'conclusions' are merely attempts to instruct the jury on which witness's story to believe").

As noted in the Advisory Committee Notes to Rule 702:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

9

Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments. Ultimately, the jury must decide any disputed facts at trial. If otherwise admissible, the fact that Graham reached expert opinions by deciding who to believe provides no basis for exclusion by a court acting as a gatekeeper pursuant to *Daubert*. *See Doe v. Coastal Carolina Univ.*, No. 4:18-cv-268-SAL, 2021 WL 1651057, at *1, *4 (D.S.C. March 8, 2021) (declining to exclude expert testimony based on an alleged "lack [of] a factual understanding . . . and [of] the case in general," and ruling that any "factual mistakes or inconsistencies" in the expert's report and testimony were "subject to cross-examination and contrary evidence" at trial); *Maggard v. Essar Global Ltd.*, No. 2:12CV00031, 2015 WL 1498965, at *2–3 (W.D. Va. Apr. 1, 2015) (rejecting a challenge to an expert's opinion due to his reliance upon on "unreliable facts," as falling outside the court's role as gatekeeper). Accordingly, the fact that Graham sorted and selected among disputed facts in forming his opinions is not a basis for exclusion.

Norfolk Southern correctly argues, however, that several of Graham's opinions are also subject to exclusion as unfairly prejudicial and invading the jury's role to address the key factual and legal disputes at trial. As noted above, Graham explicitly opines that Norfolk Southern and/or its employees "negligently failed" to permit Riddick to control the loading of the wheel sets, to properly communicate with Riddick while that occurred, and to provide a safe workplace and work methods. ECF No. 34-8, at 4–5. Relative to Norfolk Southern's affirmative defense of contributory negligence, ECF No. 9, at 5, Graham also opines that Riddick was neither "careless" nor "at fault in this event." *Id.*

Riddick correctly notes that Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." ECF No. 39, at 7 (citing Fed. R. Evid. 704). The analysis, however, does not end there. Notwithstanding Rule 704, the Fourth Circuit has observed that

"[t]he touchstone of admissibility of testimony that goes to the ultimate issue . . . is helpfulness to the jury." *United States v. Perkins*, 470 F.3d 150, 157–58 (4th Cir. 2006) (citations omitted). When assessing opinion testimony, the trial court's task is to distinguish between helpful testimony embracing an ultimate fact and unhelpful testimony that simply recites a legal conclusion. *Id.* at 158 (citing *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002)). As further noted in *Perkins*, conclusory opinion testimony using terms having specialized legal meaning such as "discrimination," "negligent," or "fraudulent . . . scheme" are freighted with "considerable legal baggage" and "such testimony nearly always invades the province of the jury." *Id.* (citations omitted); *see also Doe*, 2021 WL 1651057, at *3 (precluding expert testimony that the defendant's conduct violated Title IX as "beyond the proper role of an expert witness" and for "supplant[ing] the jury's role in evaluating and determining the facts").

The foregoing reasoning applies to that subset of Graham's opinions, beyond the full set already excluded, that ascribe negligence to Norfolk Southern and the absence of fault to Riddick. Even had Graham properly reported about his experience and detailed the factual bases for his opinions, this subset of opinion remains unhelpful to the jury. Rather than addressing the conduct of those involved in the disputed incident against the backdrop of Graham's experience and any applicable industry standards, workplace rules, and accepted safety practices, such proposed testimony simply instructs the jury how to decide the case. Because it will unfairly prejudice Norfolk Southern and will adversely impact the jury's assessment of the parties' dispute, such opinion testimony is excluded.[1] *See* Fed. R. Evid. 403.

---

[1] In light of the rulings noted above, no need exists to address Norfolk Southern's remaining contention that Graham's opinions should be excluded as matters commonly known to, or falling within, the experience of the jury.

## CONCLUSION

Accordingly, for the reasons stated herein, Norfolk Southern's motion *in limine* to exclude testimony of Philip Graham (ECF No. 33) is **GRANTED.**

The Clerk shall forward a copy of this Opinion and Order to all counsel of record.

/s/
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
April 20, 2022

12